IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION


JOHN P. PONDER
ADC #76977                                                                                            PLAINTIFF


V.                                           5:06CV00134 SWW/HDY


BROWNLEE *et al.*[1]                                                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and

---

[1] Plaintiff's original Complaint named as Defendants, among others, Larry Zeno, William Walker, and Erma Hendrix. They are no longer members of the Post-Prison Transfer Board and have been replaced, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, with current board members Lynn Story, Richard Mays, and Abraham Carpenter, respectively, as parties in their official capacities. The Court took the liberty, upon directing service of the Complaint, of replacing former Governor Mike Huckabee with current Governor, Mike Beebe, in his official capacity. Plaintiff has filed a Motion to Amend that seeks to effect these same changes to the parties. Because the substitution of parties occurred automatically pursuant to the Federal Rules of Civil Procedure, Plaintiff's Motion to Amend (docket entry #27) should be DENIED AS MOOT.

recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite 402
> Little Rock, AR 72201-3325

## **DISPOSITION**

Plaintiff, who is currently confined at the Cummins Unit of the Arkansas Department of Correction, filed this *pro se* action pursuant to 42 U.S.C. § 1983, challenging the constitutionality of the clemency procedures that have been established since he was convicted and sentenced. Before the Court is Defendants's Motion to Dismiss (docket entry #30) and Brief in Support (docket entry

#31), to which Plaintiff has filed a Response (docket entry #41) and Defendants a Reply (docket entry #42).

### Standard of Review

On a motion to dismiss the Court accepts as true all of the allegations of the Complaint and draws all reasonable inferences in favor of the nonmovant plaintiff. *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 555 (8th Cir.2006). A Rule 12(b)(6) motion should not be granted unless it appears beyond a reasonable doubt the plaintiff can prove no set of facts entitling him or her to relief. *Young v. City of St. Charles, MO*, 244 F.3d 623, 627 (8th Cir.2001). While the Court takes as true the factual allegations of the Complaint, "the complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. General Motors Corp.*, 172 F.3d 623, 627 (8th Cir.1999); *see Quinn v. Ocwen Federal Bank FSB*, 470 F.3d 1240, 1244 (8th Cir.2006)("'complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim,'" *quoting DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir.2002)). In addition to the Complaint the Court may consider matters of public record, of which judicial notice may be taken, and "materials necessarily embraced by the pleadings" without converting the motion to one for summary judgment. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999); see *Manion v. Nagin*, 394 F.3d 1062, 1065 n. 3 (8th Cir.), *cert. denied,* 545 U.S. 1128 (2005).

### Analysis

Plaintiff entered a plea agreement in 1998 to a charge of first-degree murder (committed in 1995) in exchange for a life sentence. He states that his attorney told him that a "life sentence" meant he would eligible for parole in twelve years and, if he were denied, he would be eligible for

parole each year thereafter. Plaintiff's defense attorney, however, apparently confused the concepts of parole and clemency. In the meantime, a state statute changed the guidelines for the grant of clemency and applied them retroactively; now, Plaintiff argues, he must serve twenty years before he is eligible to seek clemency, and may only re-apply every four years, rather than annually. Plaintiff argues that this amounts to a violation of the *ex post facto* clause of the U.S. Constitution and a denial of equal protection, and contends that he should be allowed to apply for clemency after twelve years, instead of having to wait for the twenty-year mark.

The Defendants have filed this Motion to Dismiss, arguing that Plaintiff lacks standing to raise these claims because he has not suffered any injury from the new clemency regulations; that the claims are not ripe because Plaintiff has not sought a clemency review since his first application in 1999 or since the statutory changes were implemented in 2004; that he has failed to state a claim for relief of a federal claim because there is no constitutional or inherent right to parole or clemency; and that the changes in the law do not amount to an *ex post facto* violation because the changes in the procedure did not result in increased punishment for him.

Plaintiff's response abandons his previously-asserted claims of denial of equal protection, as well as his claim of entitlement to clemency after serving twelve years of his sentence. But, he argues, he should not be deprived of the opportunity to seek clemency annually, as the law provided at the time of his conviction.

Because the undersigned finds the Defendants' argument persuasive, the Court recommends that the pending Motion to Dismiss be granted and Plaintiff's claims be dismissed, without prejudice to his right to re-file if and when he suffers an injury as a result of the statute at issue.

**A. Standing**

Defendants have argued that Plaintiff lacks standing to bring these claims because he has not suffered an injury. Plaintiff applied for clemency in 1999, to former governor Mike Huckabee (docket entry #41, Exhibit A). At that time, he was advised in the letter denying his application for a commutation of his sentence that he must wait four years from the date of denial before reapplying for any other request for executive clemency.[2] There is no evidence or argument that Plaintiff has again sought any type of clemency since that date.

Defendants argue that because Plaintiff has not again sought clemency, nor a waiver of the four-year waiting period, which the Post-Prison Transfer Board members are authorized to grant,[3]

---

[2] Apparently Plaintiff was allowed to apply for clemency without having to wait for twelve or twenty years. In 1999, when he apparently first requested commutation from Gov. Huckabee, Plaintiff had only served about one year of his life sentence. The parties have not explained the discrepancy between Ponder's interpretation of the statute, that prior to 2004 he would have been allowed to seek clemency annually, and Gov. Huckabee's letter indicating that in 1999 he must wait four years to re-apply. However, it appears from the previous version of the statute, Ark. Stat. Ann. § 5-4-607, amended by Act 498 of 1999, that an applicant who had been convicted of capital murder, or any Class Y or Class A felony, would only be eligible to reapply after four years. Prior to the adoption of that Act, any applicant, regardless of the nature of their conviction, was eligible to re-apply after one year from the date of the denial. So, in effect, Plaintiff's challenge is to the 1999 Act, which first extended the re-application time from one year to four years.

[3] (3)(A) The Parole Board may waive the waiting period for filing a new application for pardon, commutation of sentence, or remission of fine or forfeiture described in subdivision (c)(1)(A) of this section if:
 (i) It has been at least twelve (12) months after the date of filing the application that was denied; and
 (ii) The Parole Board determines that the person whose application was denied has established that:
  (a) New material evidence relating to the person's guilt or punishment has been discovered;
  (b) The person's physical or mental health has substantially deteriorated; or
  (c) Other meritorious circumstances justify a waiver of the waiting period.

he has suffered no injury. Plaintiff urges that he does have standing because his previous request was denied, back in 1999, and he was told he had to wait four years to re-apply.

Defendants are correct that, because Plaintiff has not re-applied in the previous eight years since that first denial, he cannot argue that he has been injured by the rule or its change. If Plaintiff had sought review, or a waiver of the four-year waiting period, and been denied, then he would have sustained an injury that would give him standing to challenge the procedures. But here, Plaintiff does not know whether his waiver request would be, or would have been, granted, nor whether the request for review that would follow the waiver might be granted. Any injury is speculative, at best, as to what might have happened had Plaintiff sought this relief. But because he has not, the Court agrees with the Defendants that Plaintiff does not have standing at this time to seek redress.

**B.   Ripeness**

In a corollary to the issue of standing, Defendants have also argued that Plaintiff's claims are not "ripe," or fit for judicial determination, because the Defendants' position on Plaintiff's request for a clemency hearing will not be known unless and until Plaintiff actually makes a request for executive clemency.[4] Any injuries to Plaintiff are contingent upon the Defendants' review of his

---

(B)(i) The Board of Corrections shall promulgate rules that will establish policies and procedures for waiver of the waiting period.
(ii) The Board of Corrections may make additions, amendments, changes, or alterations to the rules in accordance with the Arkansas Administrative Procedure Act, § 25-15-201 *et seq*.

Ark. Code Ann. § 16-93-207 (2007).

[4] The Post Prison Transfer Board does not, however, make the final decision on whether to grant clemency. That decision lies only with the Governor. The Board's role is limited to investigating the application for clemency and making a recommendation to the Governor regarding the application. This is discussed more thoroughly *infra*.

application, and if Plaintiff's request is granted, he will have suffered no injury. But at this point, when Plaintiff has not sought review, he cannot argue that he could or might suffer injury. Not until he has sought, unsuccessfully, a waiver and/or a review, will Plaintiff have sustained an injury for which this Court could provide relief.

### C. Failure to State a Claim

Defendants also argue that Plaintiff cannot state a claim because there is no factual basis for a violation of 42 U.S.C. § 1983. And, indeed, there is no constitutional or inherent right to conditional release before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*., 442 U.S. 1, 7 (1979). At most, the U.S. Constitution protects a "legitimate claim of entitlement" that can arise only under state law. *Id.* Therefore, the issue for this Court is whether there is a state-created liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995)(holding that state-created liberty interests will generally be found only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.")

Because clemency is extended mainly as a matter of grace, and the power to grant it is vested in the executive prerogative, it is a rare case that presents a successful due process challenge to clemency procedures themselves. On the other hand, if the state actively interferes with a prisoner's access to the very system that it has itself established for considering clemency petitions, due process is violated.. *Noel v. Norris,* 336 F.3d 648, 649 (8th Cir. 2003), *citing Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280-81 (1998); *Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000). *See also Perry v. Brownlee,* 122 F.3d 20, 23 (8th Cir.1997)(*per curiam*)(because Arkansas clemency statute does not impose standards as to when clemency must be granted, it does not create constitutional

right or entitlement sufficient to invoke Due Process Clause); *Wainwright v. Brownlee*, 103 F. 3d 708 (8th Cir. 1997)(*citing Otey v. Stenberg,* 34 F.3d 635, 637-39 (8th Cir.1994)(holding that no procedural or fundamental constitutional right creates a protected interest in a standardless clemency statute; absent a constitutionally protected interest, clemency statute only provides a state-created right to ask for mercy); *Otey v. Hopkins,* 5 F.3d 1125, 1128-29 n. 3 (8th Cir.1993) (same), *cert. denied*, 512 U.S. 1246 (1994)).

Because Plaintiff's crime was committed in 1995 and he was sentenced in 1998, his eligibility for parole consideration was governed by Ark. Code Ann. § 16-93-607(c)(1), which provided that an inmate sentenced to life imprisonment, like Plaintiff, would not be eligible for release on parole unless and until his sentence was commuted to a term of years by executive clemency. The sole authority to issue a pardon is vested in the governor under ARK. CONST. Art. 6, § 18, which is considered "purely a matter of grace." *Pickens v. Tucker*, 851 F. Supp. 363, 365 (E.D. Ark. 1994), *aff'd. en banc*, 23 F. 3d 1477 (8th Cir. 1994). The duty of the Post Prison Transfer Board is simply to investigate an application for clemency and submit to the governor a recommendation regarding the application. *See Whitmore v. Gaines*, 24 F. 3d 1032, 1034 (8th Cir. 1994), *cert. denied* 511 U.S. 1079 (1994). Arkansas' executive clemency statute, Ark. Code Ann. § 16-93-204, creates no protected interest and imposes "no standards, criteria, or factors which the Board may or may not consider in making its recommendation." *Whitmore*, 24 F. 3d at 1034; *see also Otey v. Hopkins, supra*.

In sum, because Plaintiff has no protected constitutional right to clemency or any conditional early release from his sentence, he cannot state a claim for relief under § 1983.

### D. *Ex Post Facto* Clause

Lastly, Defendants challenge Plaintiff's contention that the retroactive application of the clemency procedure statute amounted to a violation of the *Ex Post Facto* provision of the U.S. Constitution. The *Ex Post Facto* Clause states simply: "No State shall . . . pass any . . . *ex post facto* Law. . . ." U.S. Const. art. I, § 10. Among other things, the clause has been held to prohibit retroactive application of enactments which would increase the punishment for a crime after the crime has been committed. *Garner v. Jones*, 529 U.S. 244, 250 (2000)(*citing Collins v. Youngblood*, 497 U.S. 37, 42 (1990) and *Beazell v. Ohio,* 269 U.S. 167, 169-70 (1925)); *see Johnson v. United States*, 529 U.S. 694, 699 (2000). In the case of parole, the Supreme Court has held "[r]etroactive changes in laws governing parole of prisoners, in some instances" may be seen as increasing the punishment for a crime in violation of the *Ex Post Facto* Clause. *Garner*, 529 U.S. at 251; *see California Dep't of Corrections v. Morales*, 514 U.S. 499, 508-09 (1995). The "controlling inquiry" in this context is whether the retroactive change in the law creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes" by a "matter of degree." *Garner*, 529 U.S. at 250 (*quoting Morales*, 514 U.S. at 509). The requisite "degree" is present if it is shown that a change in parole law "creates a significant risk of prolonging [the prisoner's] incarceration." *Id*. at 251. This may be apparent from the terms of the challenged law (or rule) or may be demonstrated "by evidence drawn from . . . practical implementation by the agency charged with exercising discretion that [the law's] retroactive application will result in a longer period of incarceration than under the earlier [law]." *Id*. at 255.

The Supreme Court's opinions in *Morales* and *Garner* are the starting point. *Morales* involved a prisoner who had been convicted of two murders. The prisoner was nonetheless eligible

for parole. A subsequent change in California law allowed the parole board to defer parole suitability hearings for up to three years in the case of a prisoner convicted of more than one homicide. 514 U.S. at 503. The Supreme Court rejected an *ex post facto* challenge on *habeas corpus* review because the statutory change "create[d] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold [the Supreme Court] might establish under the *Ex Post Facto* Clause." 514 U.S. at 509.

*Garner* also involved a double murderer sentenced to life in prison. 529 U.S. at 247. Georgia law required the parole board to initially consider inmates serving life sentences for parole after seven years. At the time of the prisoner's second homicide parole board rules required reconsideration of life-serving inmates for parole every three years. Subsequently the rules were changed to provide for reconsideration "at least every eight years." *Id*. While dubious about the merits in view of the prisoner's serious criminal history, *id*. at 255, the Supreme Court reversed summary judgment on the *ex post facto* claim because the court of appeals' analysis had not indicated whether the amended rule created the requisite significant risk of increased punishment, nor had the prisoner's request to conduct discovery been addressed. *Id*. at 257.

Unlike the prisoners in *Morales* and *Garner*, Plaintiff is not eligible for parole. The sentence for the crime he committed is life in prison without possibility of parole. In Arkansas, life means life unless the Governor exercises the authority vested in him by the state constitution and statute to commute a life sentence to a term of years. Parole and commutation are conceptually distinct and serve different purposes. Parole is an early release from incarceration prior to the end of the prison term to which the person has been sentenced. Commutation, on the other hand, is the substitution

of a less severe sentence (in Plaintiff's case, a term of years) for the sentence imposed by the court (life without parole). *See* 59 AM.JUR.2d Pardon and Parole § 5 at 13.

In essence, Plaintiff is arguing that a retroactive limitation on the frequency with which he may be considered for commutation to a sentence with a lesser punishment risks increasing his punishment under the sentence he did receive. But the revision to the clemency statute does not have any effect on the length of the life sentence Plaintiff is serving. As there is no risk that the measure of Plaintiff's punishment for the crime he committed has been increased by the statutory revision, its application to him does not violate the *Ex Post Facto* Clause. Moreover, Plaintiff is far from eligible for parole; he must first obtain commutation of his sentence to a term of years.  Therefore, nothing in the terms or the practical effect of the extension of the waiting period can portend a longer stay in prison for Plaintiff than he already faces, and the Defendants' Motion to Dismiss should be granted on this ground as well.

## Conclusion

Accordingly, for all these reasons,

IT IS THEREFORE RECOMMENDED that:

1. Plaintiff's Motion to Amend (docket entry #27) should be DENIED AS MOOT, and the Clerk of the Court should substitute as Defendants Lynn Story, Richard Mays and Abraham Carpenter for Defendants Zeno, Walker, and Hendrix, respectively; and

2. Defendants' Motion to Dismiss (docket entry #30) should be GRANTED, and Plaintiff's claims DISMISSED WITHOUT PREJUDICE to his right to re-file if and when his claims are ripe and he has sustained an injury.

DATED this __11___ day of October, 2007.

```
                              /s/ H. Daniel Young
                              _____
                              UNITED STATES MAGISTRATE JUDGE
```